IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‘I

| | |
|---|---|
| GEOFFREY MOLFINO, | CIVIL NO.: CV07-00626 JMS/LEK |
| Plaintiff, | |
| vs. | MEMORANDUM OF AUTHORITIES |
| CHRISTOPHER J. YUEN in his capacity as Planning Director, County of Hawai‘i; COUNTY OF HAWAI‘I; JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; DOE GOVERNMENTAL UNITS 1-10; and DOE ENTITIES 1-10, | |
| Defendants. | |

## TABLE OF CONTENTS

I.   BACKGROUND ....................................................................... 1-4

II.  STANDARD OF REVIEW ...................................................... 4-5

III. DISCUSSION ...................................................................... 6-30

A.   This Court Does Not Have Jurisdiction to Hear This Matter Because
     Plaintiff Failed to Properly and Timely Exhaust his Administrative
     Remedies ........................................................................ 6-10

B.   The Applicable Statute of Limitations has Accrued and Plaintiff is
     Time Barred From Bringing This Suit ........................................ 10-13

C.   Plaintiff Failed to Join Indispensible Parties Under Rule 19 of the
     Federal Rules of Civil Procedure .................................. 13-16

D.   Plaintiff Constitutional Claims Shall be Dismissed Since They
     Fail to State a Claim Upon Which Relief can be Granted ........... 17-20

     1. Due Process, Equal Protection and Taking Claims Under the Fifth
        Amendment of the United States Constitution Apply Only to
        Actions of the Federal Government ............................... 17

     2. Equal Protection Claims Under the Fourteenth Amendment of the
        United States Constitution Requires a Showing of an Intent or
        Purpose to Discriminate by Defendant ................................... 17-18

     3. Plaintiff has not Suffered a Regulatory Taking ...................... 19-20

E.   Plaintiff's Promissory Estoppel Claim Fails to Satisfy all the Elements
     And Therefore Must Fail ................................................. 20-22

F.   There is No Clear Evidence of Record Which Supports a Finding That
     Plaintiff Justifiably and Detrimentally Relied Upon Defendant Yuen's
     June 2, 2004 Letter ...................................................... 23-24

G.   Defendant Yuen Owes no Duty to Plaintiff Therefore Plaintiff's
     Negligence Claim Must Fail ............................................. 24-29

i

H.   County did not Convert Plaintiff's Chose ..................................... 29-30

IV.   CONCLUSION ............................................................................. 30

TABLE OF AUTHORITIES

Cases

*Adams  v. State*,
    555 P.2d 235 (1976)  ................................................................... 25

*Aged Hawaiians v. Hawaiian Homes Com'n.,*
    78 Hawai'i 192, 891 P.2d 279 (1995) ......................................... 6

*Anderson v. Liberty Lobby,*
    477 U.S. 242, 106 S.Ct. 2505 (1986) ............................................ 5

*Apodaca v. Rio Arriba County Sheriff's Dept.,*
    647 F. Supp. 752 (D.N.M. 1986)................................................. 18

*Application of Herrick,*
    82 Hawai'i 329, 922 P.2d 942 (1996) .................................. 20, 21

*Baker v. Coughlin,*
    77 F.3d 12 (2nd Cir. 1996) ........................................................ 6

*Bally Export Corp. v. Balicar, Ltd.,*
    804 F.2d 398 (7th Cir. 1986) ...................................................... 7

*Barren v. Harrington,*
    152 F.3d 1193 (9th Cir. 1998),
    cert. denied, 525 U.S. 1154, 119 S.Ct. 1058, 143 L.Ed.2d 63 (1999).......... 18

*Basque v. Yuk Lin Liau,*
    50 Haw. 397, 441 P.2d 636 (1968)............................................. 11

*Bd. of Dirs. of Ass'n of Apartment Owners of Regency Tower Condo. Project v.*
   *Regency Tower Venture,*
    2 Haw.App. 506, 635 P.2d 244 (1981)........................................ 11

*Buck v. Miles,*
    89 Hawai'i 244, 971 P.2d  717 (1999)  ..................................... 11

*California Arch. Bldg. Prod. Inc., v. Franciscan Ceramics,*
   818 F.2d 1466 (9th Cir. 1987) ......................................................... 5

*Celotex Corp. v. Catrett,*
   477 U.S. 317, 106 S.Ct. 2548 (1986) ........................................... 5

*City of Cleburne, Tex. v. Cleburne Living Center,*
   473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 786 (1985) ................................ 17

*Cloverleaf Standardbred Owners v. National Bank,*
   699 F.2d 1274 (D.C. Cir. 1983).................................................... 14

*Collier v. Shell Oil Co.,*
   534 So.2d 1015 (Miss. 1988)....................................................... 23

*Coon v. City and County of Honolulu,*
   98 Hawaiʻi 233, 47 P.3d 348 (2002) ............................................ 5

*Cootey v. Sun Inv., Inc.,*
   68 Haw. 480, 718 P.2d 1086 (1986)........................................... 25

*Cranford Ins. Co. v. Allwest Ins. Co.,*
   645 F.Supp. 1440 (N.D. Cal 1986)............................................. 5

*Daniels v. Williams,*
   474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) ................................. 18

*Dinsky v. Town of Framingham,*
   386 Mass. 801, 438 N.E.2d 51 (1982).......................................... 25

*First Ins.Co. of Hawaii, Ltd. v. International Harvestor Co.,*
   66 Haw. 185, 659 P.2d 64 (1983)............................................... 24

*Harris v. McRae,*
   448 U.S. 297, 100 S.Ct. 2671 (1980) .......................................... 18

*In re of Kealiiahonui's Estate,*
   9 Ha. 1, 1893 WL 1044 (1893).................................................. 29

*Kelley v. Kokua Sales and Supply, Ltd.,*
   56 Haw. 204, 532 P.2d 673 (1975)............................................. 25

*Kona Old Hawaiian Trails Group By and Through Serrano v. Lyman,*
    69 Haw. 81, 734 P.2d 161 (1987)........................................................... 6, 7, 8

*Leaf v. City of San Mateo,*
    104 Cal.App.3d 398, 163 Cal.Rptr. 711 (1980) ...................................... 12, 13

*Ledbetter v. Goodyear Tire & Rubber Co.,*
    550 U.S. 618, 127 S.Ct. 2162 (2007) .............................................. 11, 12, 13

*Lee v. City of Los Angeles,*
    250 F.3d 668, (9th Cir. 2001) ...................................................................... 17

*Lucas v. South Carolina Coastal Council,*
    505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992) ...................... 19, 20

*Makah Indian Tribe v. Verity,*
    910 F.2d 555 (9th Cir. 1990) ........................................................................ 14

*Marshall v. Marshall,*
    670 S.W.2d 213 (Tenn. 1984) ...................................................................... 23

*McNutt v. General Motors Acceptance Corp. of Indiana,*
    298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135, (1936) ...................................... 7

*Molokoa Village Development Co., Ltd. v. Kauai Elec. Co., Ltd.,*
    60 Haw. 582, 593 P.2d 375 (1979)......................................................... 20, 21

*Moriarty v. Garden Sanctuary Church of God,*
    341 S.C. 320, 534 S.E.2d 672 (2000)........................................................... 11

*O'Connor v. City of New York,*
    58 N.Y.2d 184, 460 N.Y.S.2d 485, 447 N.E.2d 33 (1983) ......................... 25

*Penn Cent. Transp. Co. v. City of New York,*
    438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978) ........................... 19, 20

*Plyer v. Doe,*
    457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982) ................................ 17

*Provident Tradesman Bank & Trust Co. v. Patterson,*
    390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968) ................................... 14

*Santos v. Dist. Council of New York City,*
    619 F.2d 963 (2nd Cir. 1980) ........................................................................ 6

*Schweiker v. Wilson,*
    450 U.S. 221, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981) .............................. 17

*Sheehan v. Grove Farm Co., Inc.,*
    114 Hawai'i 376, 163 P.3d 179 (2005) .......................................................... 7

*Sigmond v. Brown,*
    828  F.2d 8 (9th Cir. 1987)  ........................................................................... 5

*Stigler v. City of Chicago,*
    48 Ill.2d 20, 268 N.E.2d 26 (1971)............................................................... 25

*Takabuki v. Ching,*
    67 Haw. 515, 695 P.2d 319 (1985)................................................................ 16

*Tanaka v. Department of Hawaiian Home Lands,*
    106 Hawai'i 246, 103 P.3d 406 (2004) .......................................................... 9

*Thornley v. Sanchez,*
    9 Haw.App. 606, 857 P.2d 601 (1993)........................................................ 16

*Tsuru v. Bayer,*
    25 Haw. 693, 1920 WL 830 (1920)............................................................... 29

*Wichita and Affiliated Tribes of Oklahoma v. Hodel,*
    788 F.2d 765 (C.A.D.C. 1986) ..................................................................... 14

*Yamaguchi v. Queen's Medical Center,*
    65 Haw. 84, 648, P.2d 689, (1982)............................................................... 10

Statutes

Hawai'i Revised Statute
    Chapter 46 ................................................................................................. 8
    § 91-14 ................................................................................................. 6, 10
    § 92F-1 ..................................................................................................... 25
    § 657-7 ..................................................................................................... 10

    Constitutional Provisions

U.S. Constitution
    Fifth Amendment .................................................................................... 17
    Fourteenth Amendment .................................................................... 17, 18


    Rules

Federal Rules of Civil Procedure
    Rule 12(b) ............................................................................................... 14
    Rule 12(b)(6) ............................................................................................. 8
    Rule 19 ..................................................................................................... 13
    Rule 56(c) ............................................................................................... 4, 5


    Other

Black's Law Dictionary ................................................................................ 15

Hawai'i Administrative Procedures Act ....................................................... 9

Hawai'i County Code
    Chapter 23 ................................................................................................. 9
    Chapter 23 Subdivision Code, Article 11 .................................................. 2
    § 23-119 ................................................................................................... 28
    § 23-2 ............................................................................................. 8, 9, 10
    § 23-5 ................................................................................................... 6, 9
    § 23-7 ..................................................................................................... 27

Revised Laws of Hawai'i
    § 241-7 ..................................................................................................... 10
    § 4815 ...................................................................................................... 23

Reinstatement (Second) of Contract

§ 2(1)..................................................................................................... 20

Uniform Information Practices Act ...................................................... 25

<u>MEMORANDUM OF AUTHORITIES</u>

I.   <u>BACKGROUND</u>

Plaintiff's Geoffrey Molfino ("Plaintiff") Complaint filed on November 16, 2007 ("Complaint")[1] against Christopher J. Yuen in his capacity as Planning Director, County of Hawai'i and County of Hawai'i's (collectively referred to as "County") contains facts alleging that Defendant Christopher J. Yuen in his capacity as Planning Director for the  County of Hawai'i ("Defendant Yuen"), violated Plaintiff's constitutional rights and other causes of action when Defendant Yuen denied Plaintiff's pre-existing lot recognition application requesting recognition of a seven (7) lot subdivision on Plaintiff's forty-nine (49) acre parcel of land ("subject property") identified as Tax Map Key ("TMK") No. 3-3-2-2-35, in Nīnole, Hawai'i.

Plaintiff along with three other joint tenants, Beverly Lind Molfino, Ted A. Molfino and Colleen C. Molfino purchased the subject property on June 13, 2003, for $350,000.00.  *See* Exhibit 1, Warranty Deed and Counter Offer.

On July 15, 2003, Plaintiff entered into an "Exclusive Right-to-Sell Listing Agreement" with Remax Properties, with a listing price of $795,000.00.  *See* Exhibit 2, Exclusive Right-to-Sell Listing Agreement.

---

[1]  On November 14, 2007, Plaintiff filed this complaint in the Circuit Court of the Third Circuit of the State of Hawai'i.  On December 26, 2007, County filed an answer to the Complaint.  On January 4, 2008, County successfully removed to the to the United States District Court for the District of Hawai'i.

By way of letter dated December 24, 2003, Plaintiff applied for a "determination of lots of record" pursuant to the Hawai'i County Code ("HCC") Chapter 23 Subdivision, Article 11.  *See* Exhibit 3, Molfino Letter dated December 24, 2003.

On February 5, 2004, Plaintiff accepted and entered into a binding purchase agreement with Michael Pruglo ("Pruglo") for the sale of the subject property for $795,000.00.  *See* Exhibit. 4, Deposit Receipt Offer and Acceptance (DROA).

On March 17, 2004, Pruglo submitted an "ADDENDUM" to the sales agreement to reference the sales price of $795,000.00, now payable by way of an "all-cash" transaction, effectively waiving conditions C-24, C-25 and C-26, effectively removing all "FINANCIAL CONTINGENCIES" of the sale contract. *See* Exhibit 5, Addendum.

On April 4, 2004, and June 11, 2004, written documents confirmed that the only matter holding up closing and final recordation of the transaction was due to delays with obtaining the survey.  *See* Exhibits 6 and 7, Written Notice to Escrow to Extension of Closing Date.

On June 2, 2004, Defendant Yuen, pursuant to Plaintiff's December 2003 application, granted a pre-existing lot determination for two (2) separate lots of record on subject property.  *See* Exhibit 8, Determination Letter Dated June 2, 2004.

Upon receipt of Defendant Yuen's June 2, 2004 pre-existing lot determination letter ("determination letter"), Plaintiff had thirty (30) days to file an appeal with the County of Hawai'i if in fact they did not agree with Defendant Yuen's determination. Plaintiff failed to take any action. *See* Dec. of Alice Kawaha, pg 2, ¶ 5-7.

On July 19, 2004, Plaintiff sold the subject property to Pruglo dba Home Tech Construction for $795,000.00. *See* Exhibits 9, Conveyance Tax Certificate and Warranty Deed. In just over a year, Plaintiff more than doubled his original purchase price of $350,000.00. *Id.*

On January 15, 2005, on behalf of Pruglo, Sidney Fuke ("Fuke"), pursuant to a thorough investigation, submitted a letter/application to Defendant Yuen for a pre-existing six (6) lot determination for the subject property. Included in his application, Fuke submitted a May 22, 2000, letter from former Planning Director Virginia Goldstein ("Goldstein"), addressed to Robert Williams, real estate agent for C. Brewer and Company. At the time of Goldstein's May 2000 letter, C. Brewer and Company was the owner of record for the subject property. *See* Complaint at 5, ¶ 21.

On June 1, 2005, based on all the information submitted in Pruglo's application, Defendant Yuen granted Pruglo tentative subdivision approval for subject property. *See* Complaint at 6, ¶ 22.

3

On July 11, 2005, Defendant Yuen granted final subdivision approval for the subject property, approving a seven (7) lot pre-existing lot determination.  *See* Complaint  at 6, ¶ 22.

Plaintiff now alleges that Defendant Yuen's actions granting only a two (2) lot pre-existing lot determination and subsequently granting a seven (7) lot subdivision consolidation to Pruglo violated Plaintiff's constitutional substantive and procedural due process rights, equal protection rights and amounted to a regulatory taking.  *See* Complaint at 6-9, ¶ ¶ 25 to 43.  Plaintiff further alleges that Defendant Yuen's actions were a conversion of a chose, abuse of discretion, negligent, as well as caused detrimental reliance and promissory estoppel.  *See* Complaint at 9- 13, ¶ ¶ 44 to 63.

II.    STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Federal Rules of Civil Procedure ("Fed.R. Civ.P.") Rule 56(c).

A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties.  The evidence must be viewed in the light most favorable to the non-

moving party.  *Coon v. City and County of Honolulu*, 98 Hawai'i 233, 245, 47 P.3d

348, 360 (2002).

   The United States Supreme Court stated the principles governing standards

of review of motions for summary judgment in *Celotex Corp. v. Catrett*, 477 U.S.

317, 106 S.Ct. 2548 (1986) and *Anderson v. Liberty Lobby*, 477 U.S. 242, 106

S.Ct. 2505 (1986).  In *Celotex*, the Court held that:

> [t]he plain language of Rule 56 (c) mandates entry or summary
> judgment, after adequate time for discovery and upon motion, against
> a party who fails to make a showing sufficient to establish the
> existence of an element essential to the party's case, and on which that
> party will bear the burden of proof at trial.

*Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.[2]  *See also Sigmond v. Brown,* 828 F.2d

8 (9th Cir. 1987); *California Arch Bldg. Prod. Inc., v. Franciscan Ceramics,* 818

F.2d 1466, 1468 (9th Cir. 1987); *Cranford Ins. Co. v. Allwest Ins. Co.,* 645 F. Supp

1440, 1443 (N.D. Cal. 1986).

---

[2] The Court further held that [s]ummary judgment is properly regarded not as a
disfavored procedural shortcut, but rather as an integral part of the Federal Rules as
a whole, which are designed "to secure a just, speedy and inexpensive
determination of every action…Rule 56 must be construed with due regard…for
the rights of persons opposing…claims…to demonstrate the manner provided by
the Rule, prior to trial, that the claims…have no factual basis." *Celotex*, 477 U.S.
at 327, 106 S.Ct. at 2555.

III.   <u>DISCUSSION</u>

A.   THIS COURT DOES NOT HAVE JURIDICTION TO HEAR
THIS MATTER BECAUSE PLAINTIFF FAILED TO PROPERLY
<u>AND TIMELY EXHAUST HIS ADMINISTRATIVE REMEDIES.</u>

This case should be dismissed for lack of subject matter jurisdiction; because the Plaintiff failed to exhaust administrative remedies as required by Hawaiʻi Revised Statute ("HRS") § 91-14 and HCC § 23-5, as amended 2005.

Failure to exhaust administrative remedies is an affirmative defense provided by state law, where the application of the defense in this litigation is governed by federal procedural law, s*ee Santos v. Dist. Council of New York City,* 619 F.2d 963, 967 (2nd Cir. 1980), and state substantive law, *see Baker v. Coughlin,* 77 F.3d 12, 14 (2nd Cir. 1996).

Accordingly under state substantive law, the doctrine of "Primary Jurisdiction" deprives the circuit courts of subject matter jurisdiction "where a claim is originally cognizable in the courts, and…enforcement of the claim requires the resolution of issues which, under a regulatory scheme have been placed within the special competence of an administrative body."   *Kona Old Hawaiian Trails Group By and Through Serrano v Lyman,* 69 Haw. 81, 93, 734 P.2d 161, 169 (1987).

The primary jurisdiction doctrine is designed to promote uniformity and consistency in the regulatory process.   *Aged Hawaiians v. Hawaiian Homes*

*Com'n,* 78 Hawai'i 192, 202, 891 P.2d 279, 289 (1995).  It has been suggested that an agency of the government whose purpose is to perform an administrative function is better equipped to ascertain and interpret the circumstances underlying the legal issues and that agency is better equipped than the courts by "*specialization, by insight gained through experience, and by more flexible procedure.*"  *Kona Old Hawaiian Trails Group By and Through Serrano,* 69 Haw. at 93, 734 P.2d at 169 (emphasis added).

On a procedural note, once a challenge is made to subject matter jurisdiction, the burden rests upon the plaintiff to prove that the court in fact has subject matter jurisdiction.  *See e.g. Bally Export Corp. v Balicar, Ltd.,* 804 F.2d 398, 401 (7th Cir. 1986) (plaintiff must prove jurisdiction exists once challenged by defendants).

In *Sheehan v. Grove Farm Co., Inc.*, 114 Hawai'i 376, 390, 163 P.3d 179, 193 (2005), the Hawai'i Supreme Court, while citing the case of *McNutt v. General Motors Acceptance Corp. of Indiana, Inc.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936), stated:

> The prerequisites to the exercise of jurisdiction are…conditions which must be met by the party who seeks the exercise of jurisdiction in his favor.  He must allege in his pleading the facts essential to show jurisdiction.  If he fails to make the necessary allegations he has no standing.  If he does make them, an inquiry into the existence of jurisdiction is obviously for the purpose of determining whether the facts support his allegations…As he is seeking relief subject to [the court's] supervision, it follows that he must carry throughout the

litigation the burden of showing that he is properly in court…If his allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof.

Before the jurisdiction of the circuit court is invoked, a plaintiff is required to pursue available administrative remedies. Exhaustion of administrative remedies is required "where a claim is cognizable in the first instance by an administrative agency alone." *Kona Old Hawaiian Trails Group By and Through Serrano v. Lyman*, 69 Haw. 81, 93, 734 P.2d 161, 169 (1987).

The HCC establishes a process for the subdivision of land and in accord with HRS, Chapter 46, provides in part that… "all subdivision plats and all streets or ways within the County created for the purpose of partitioning land shall be approved by the director in accordance with this chapter." HCC, § 23-2.

HCC § 23-2, also provides that:

> Any person aggrieved by the decision of the director
> in the administration or application of this chapter, may,
> within thirty days after the director's decision, appeal
> the decision to the board of appeals. The board of appeals
> may affirm the decision of the director, or it may
> reverse, modify or remand the decision if the decision is:
> (a) In violation of this chapter or other applicable law; or
> (b) Clearly erroneous in view of the reliable, probative and
> substantial evidence on the whole record; or
> (c) Arbitrary, or capricious, or characterized by an abuse of
> discretion or clearly unwarranted exercise of discretion.

The pleadings reveal on June 2, 2004, via a letter prepared by Defendant Yuen, Plaintiff was made aware of the Defendant's determination

that only two separate legal lots of recorded existed on the subject property. *See* Complaint at 4, ¶ 12.   Pursuant to HCC § 23-2, if Plaintiff disagreed with Defendant Yuen's determination, Plaintiff had thirty (30) days to file a notice of appeal with the Hawai'i County Board of Appeals.   Upon receipt of said letter, Plaintiff failed to take any action with the Board of Appeals. *See* Dec. of Alice Kawaha at 2, ¶ 5 to 7.

In the case of *Tanaka v Department of Hawaiian Home Lands,*106 Hawai'i 246, 103 P.3d 406 (2004), the Intermediate Court of Appeals reaffirmed the requirement of exhausting a party's administrative remedy prior to invoking the jurisdiction of the circuit court, the Court of Appeals held "the right to appeal from an administrative agency's decision is governed by the Hawai'i Administrative Procedures Act (the "HAPA") and strict compliance with those provisions is required. *Tanaka*, 106 Hawai'i at 249-250, 103 P.3d at 409-410.

The complaint filed by Plaintiff is an original action and not an appeal from the decision of the Board of Appeals.   Because the Plaintiff failed to appeal Director Yuen's "determination of lots of record," this Court does not have primary jurisdiction over questions of the propriety of an action by the planning director in his duties under HCC § 23.   Pursuant to HCC § 23-5, any person aggrieved by a decision of the director… "may, within thirty days after the director's decision, appeal the decision to the board of appeals."   HCC § 23-5

provides the relief that the Board of Appeals may affirm, reverse, modify or remand the decision under the grounds stated in the statute.

In addition, HCC § 23-2, provides for an appeal to the Board of Appeals by a party who feels they have been aggrieved by the actions of the planning director. The law is clear that the circuit court would not have primary jurisdiction of this action but only as an agency appeal pursuant to the provisions of HRS § 91-14. Since Plaintiff did not comply with the requirements of filing an appeal within the statutory time limits, this court has no jurisdiction to hear this matter.

B.     THE APPLICABLE STATUTE OF LIMITATION HAS ACCCRUED AND PLAINTIFF IS TIME BARRED FROM BRINGING THIS SUIT.

HRS § 657-7 provides in relevant part that "[a]ctions for the recovery of compensation for damage or injury to persons or property shall be instituted within two years after the cause of action accrued, and not after[.]"  Under HRS § 657-7, a tort claim accrues when the plaintiff discovers, or through the use of reasonable diligence should have discovered, the negligent act, the damage, and the causal connection between the two.  *Yamaguchi v. Queen's Medical Center,* 65 Haw. 84, 90, 648 P.2d 689, 693-94 (1982).

In the context of property damage, the Hawai'i Supreme Court has previously stated that, under Revised Laws of Hawai'i ("RLH") § 241-7 (1955), a predecessor to HRS § 657-7, the statute of limitations begins to run "when the

plaintiff knew or in the exercise of reasonable care should have discovered that an actionable wrong has been committed against his property." *Basque v. Yuk Lin Liau,* 50 Haw. 397, 399, 441 P.2d 636, 637-38 (1968); *see also Bd. of Dirs. of Ass'n of Apartment Owners of Regency Tower Condo. Project v. Regency Tower Venture,* 2 Haw.App. 506, 511, 635 P.2d 244, 248 (1981).   A plaintiff need only have factual knowledge of the elements necessary for an actionable claim; legal knowledge of a defendant's negligence is not required. *Buck v. Miles,* 89 Hawai'i 244, 249-50, 971 P.2d 717, 722-23 (1999) (citation omitted).

Indeed, "[t]he exercise of reasonable diligence means simply that an injured party must act with some promptness where the facts and circumstances of an injury would put a person of common knowledge and experience on notice that some right of his has been invaded or that some claim against another party might exist." *Moriarty v. Garden Sanctuary Church of God,* 341 S.C. 320, 328-329, 534 S.E.2d 672, 676 (2000).

In *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 127 S.Ct. 2162, (2007), the United States Supreme Court emphasized that limitations periods begin to run when the "discrete act" adverse to the plaintiff occurs—"not from the date when the effects of [that act] were felt." *Ledbetter*, 550 U.S. at _ _ _, 127 S.Ct. at 2168.

Accordingly, under *Ledbetter*, Plaintiff's receipt of Defendant Yuen's determination letter granting a two (2) lot pre-existing determination, would be considered the "discrete act." Therefore, the running of the statute of limitation in this matter would commence on the date Plaintiff received Defendant Yuen's determination letter.

Additionally, in *Leaf v. City of San Mateo*, 104 Cal.App.3d 398, 163 Cal.Rptr. 711 (1980), the Court opined that the ultimate question therefore is whether the plaintiffs exercised reasonable diligence in discovering the negligent cause of their injuries. *Leaf*, 104 Cal.App.3d at 408, 163 Cal.Rptr. at _ _ _. Further, the Court found no reason to commence the running of the statute of limitations when the plaintiffs, at the outset, made reasonable, but unsuccessful, efforts to identify the negligent cause of damage. *Id.* Unlike in our case, the plaintiffs in *Leaf* actually consulted with professionals to determine the source of their injury. *Id.* Plaintiffs, in *Leaf*, were entitled to rely upon that advice and the Court ultimately tolled the running of the statute of limitations. *Id.*

Paragraph fifteen (15) of the Complaint specifically states:

"After plaintiff Molfino's sale of the Subject Property on July 19, 2004, surveyor Shirai examined the Subject's property's file at the Planning Department in efforts to retrieve data he had formerly documented…Upon inspection of the file, surveyor Shirai first noticed the Planning Departments Letter of May 22, 2000 addressed to Robert Williams. Surveyor Shirai had not previously seen this letter in the file when he surveyed the Subject Property during plaintiff Molfino's ownership period. After reading the planning

Department's letter of May 22, 2000, Surveyor Shirai then contacted Plaintiff Molfino."

Accordingly, it can be inferred from Plaintiff's assertion above, sometime closely following the July 19, 2004, sale of the subject property, Plaintiff was notified by his surveyor Robert Shirai ("Shirai") that there was a pre-existing lot determination. *See* Complaint at 4, ¶ 15.  It was at that time, that Plaintiff knew or upon the enactment of reasonable due diligence should have had knowledge of any alleged injury.   The facts indicate that upon receipt of this letter, Plaintiff failed to take any action.

However, it was not until November 16, 2007, that Plaintiff filed this cause of action.  Under both *Ledbetter* and *Leaf*, Plaintiff filed this cause of action well past the applicable accrual of the Statute of Limitation period, and therefore, Plaintiff should be time barred from bringing this action.

C.   PLAINTIFF FAILED TO JOIN INDISPENSIBLE PARTIES UNDER RULE 19 OF THE FEDERAL RULES OF CIVIL PROCEDURE.

In order to ascertain whether a party is indispensible an analysis under Fed.R.Civ.P. Rule 19 proceeds in two steps. We first must determine if an absent party is necessary to the suit.  A party is a "necessary party" if: (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter

impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.  See *Provident Tradesman Bank & Trust Co. v. Patterson,* 390 U.S. 102, 107-108, 88 S.Ct. 733, 736-737 (1968).

Second, if a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed.  This rule requires the analysis to consider four factors:  1) to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; 2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; 3) whether a judgment rendered in the person's absence will be adequate; 4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.  *See Makah Indian Tribe v. Verity* 910 F.2d 555, 560 (9th Cir. 1990).  These four factors are not rigid, technical tests, but rather guides to the overarching equity and good conscience determination.  *Cloverleaf Standardbred Owners v. National Bank*, 699 F.2d 1274 n.11 (D.C. Cir. 1983).  That being said, however, the fourth criteria–lack of an alternative forum–does not automatically prevent dismissal of a suit.  *Wichita and Affiliated Tribes of Oklahoma v. Hodel*, 788 F.2d 765, 777 (C.A.D.C. 1986).

Here, the facts indicate that Plaintiff purchased the subject property with at least three other partners, Beverly Molfino, Ted A. Molfino and Colleen C. Molfino. *See* Exhibit 4. As referenced in the deed all the partners listed above took title as Joint Tenants. *See* Exhibit 4 at 385. Black's Law Dictionary defines joint tenancy as a form of tenancy with two or more co-owners who take identical interests simultaneously by the same instrument and with the same right of possession. *See* Black's Law Dictionary 1477 (7th ed. 1999). However, as indicated in the Complaint, Plaintiff is the only party to the action. The Complaint states that from June 13, 2003 to July 19, 2004, Plaintiff co-owned subject real property, identified by Tax Map Key 3-2-002-035. Said complaint specifically states that "Plaintiff Molfino has obtained all rights to claims of the other former co-owner, Beverly Molfino through written assignment." The Complaint, however, is silent as to two other co-owners of record, Ted Molfino and Colleen Molfino.

Accordingly, due to the failure to join Ted Molfino and Colleen Molfino, the County may be subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the Ted and Colleen Molfino's interest.

Additionally, since several of the causes of action involve state claims and state claims raised in Federal Court require application of state law, Hawai'i

courts, when making the determination of indispensability of a party, have generally considered and weighed the following factors:

1)    The possibility that an absent person will be adversely affected; and

2)    The possibility of inconsistent judicial decision imposing undue hardship on the defendant; and

3)    The likelihood that the defendant will be harassed by multiple suits.

*Thornley v. Sanchez,* 9 Haw.App. 606, 857 P.2d 601 (1993).

While the rule regarding indispensable parties is not jurisdictional, it is counted on equitable consideration. *Takabuki v Ching,* 67 Haw. 515, 695 P.2d 319 (1985).  The question of whether a person should be made a party is very important when it comes to questions of a parcel of real property.

Again, the primary consideration is will the County be susceptible to multiple litigations and inconsistent judicial decision. Unfortunately, without Ted and Colleen Molfino we are unable to ascertain any affirmative position.  That being said, there is a strong likelihood that this may occur.  Accordingly, it is the County's position that Ted and Colleen Molfino are indispensible parties to this action whose identity have long since been known to Plaintiff.

D.      PLAINTIFF CONSTITUTIONAL CLAIMS SHALL BE
        DISMISSED SINCE THEY FAIL TO STATE A CLAIM UPON
        WHICH RELIEF CAN BE GRANTED.

1.      Due Process, Equal Protection and Takings Claims Under the
        Fifth Amendment of the United States Constitution Applies
        Only to Actions of the Federal Government.

The Complaint claims that the County has somehow violated Plaintiff's Due

Process, Equal Protection and Takings rights under the Fifth Amendment of the

United States Constitution.   The Due Process Clause of the Fifth Amendment,

equal protection and takings component thereof apply only to actions of the federal

government, not to those of state or local governments.   *Lee v. City of Los Angeles*,

250 F.3d 668, 687 (9TH Cir.  2001); *see also Schweiker v. Wilson,* 450 U.S. 221,

227, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981).   Plaintiff simply has not shown any

facts to support their constitutional claims.

2.      Equal Protection Claims Under the Fourteenth Amendment of
        the United States Constitution Requires a Showing of an Intent
        or Purpose to Discriminate by Defendant.

The Equal Protection Clause of the Fourteenth Amendment commands that

no State shall deny to any person within its jurisdiction the equal protection of the

laws, which is essentially a direction that all persons similarly situated should be

treated alike.   *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439,

105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985) (*citing Plyler v. Doe,* 457 U.S. 202,

216, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982)).   In order to show a violation of the

Equal Protection Clause of the Fourteenth Amendment, "a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington,* 152 F.3d 1193, 1194 (9th Cir. 1998) *cert denied*.   The challenged disparate treatment must be the result of purposeful discrimination.   *Harris v. McRae*, 448 U.S. 297, 323 n.26, 100 S.Ct. 2671, 2691 (1980).

Plaintiff's sole basis for his equal protection claim is allegations related to alleged negligent conduct on behalf of the County.   However, in *Daniels v. William*, the United States Supreme Court held that fourteenth amendment claims based on mere negligence must be dismissed.   *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).   Equal protection claims under the fourteenth amendment require more than merely negligent conduct.   *Apodaca v. Rio Arriba County Sheriff's Dept.*, 647 F. Supp. 752, 754 (D.N.M. 1986).

Plaintiff's Complaint specifically states:

> "On October 23, 2006, Defendant Yuen prepared a letter to Mr. Mark Kellberg, an adjacent real property owner concerning SUB-05-000064. In the letter, Defendant Yuen admits that the Planning Department "mistakenly" advised Plaintiff Molfino that it recognized only two (2) lots."

*See* Complaint at 6, ¶ 23.

Since the Complaint failed to allege a discriminatory purpose or intent, but only that the Defendant Yuen acted mistakenly when making his pre-existing lot determination Plaintiff's Equal Protection claims must fail.

3.     <u>Plaintiff has not suffered a Regulatory Taking.</u>

A governmental regulation is a taking if it leaves no reasonable economically viable use of property; government regulation is not a taking simply because it decreases the value of a person's property, so long as it leaves reasonable economically viable uses. *Penn Cent. Transp. Co. v. City of New York,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978). Furthermore, in *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992), the United States Supreme Court held generally that there is no regulatory taking when the government's action leaves reasonable economically viable use of the property. *Lucas,* 505 U.S. at 1004, 112 S.Ct. at 2888.   Defendant Yuen's determination letter recognizing Plaintiff as having two (2) pre-existing lots was neither a regulation nor did it deny Plaintiff of all economically viable use of his land.

Here, there was no governmental regulation that took Plaintiff's property, Defendant Yuen's June 2, 2004 determination was purely a discretionary decision, based upon information supplied to him by Plaintiff's in their letter dated December 3, 2003.

Additionally, as discussed Plainitiff and his co-owners more than doubled their money, during the short pendency of their ownership.  Accordingly, sufficient to say, significant "reasonable economical viable use of the property" remained;

therefore, plaintiff clearly has not suffered a regulatory taking under a *Penn Central* and *Lucas* analysis.

      E.     PLAINTIFF'S PROMISSORY ESTOPPEL CLAIM FAILS TO SATISFY ALL THE ELEMENTS AND THEREFORE MUST FAIL

In *Molokoa Village Development Co., Ltd. v. Kauai Elec. Co., Ltd.,* 60 Haw. 582, 593 P.2d 375 (1979), the Hawai'i Supreme Court articulated the following elements required to satisfy a claim for promissory estoppels: (1) a promise, (2) intended to be relied upon, (3) which was relied upon, (4) under circumstances in which the refusal to enforce it "would be virtually to sanction the perpetration of fraud or result in other injustice." *Molokoa*, 60 Haw. at 596, 593 P.2d at 384.

A "promise" is defined as "a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." Restatement (Second) of Contracts § 2(1) (1981). The operative term in § 2(1) is "manifestation of intention." In elaborating on this term, the commentators have said that "[a] promisor manifests an intention if he believes or has reason to believe that the promisee will infer that intention from his words or conduct." Restatement (Second) of Contracts § 2(1) cmt. b (1981).

In *Application of Herrick*, 82 Hawai'i 329, 922 P.2d 942 (1996), in an employment case, the Court held that a regulation such as 1990 RGCR 11(b), did not constitute a "promise" as contemplated by the Restatement (Second) of Contracts § 2(1) (1981). Because the Appellants cannot satisfy the "promise"

element of promissory estoppel, the Appellants' promissory estoppel argument must fail, and consequently, we need not analyze the three remaining elements of promissory estoppel , i.e., foreseeability, reliance in fact, and injustice.

However, assuming arguendo that Defendant Yuen's letter does constitute a promise, the fourth element, expressed by the *Molokoa* Court would not be satisfied.  Defendant Yuen's letter in no way could be construed to interpret that it "would be virtually to sanction the perpetration of fraud or result in other injustice."  *Application of Herrick*, 82 Hawai'i at 950, 922 P.2d at 337.

As previously discussed, Plaintiff purchased the subject property in June 13, 2003, without any indication from Pruglo that the County would recognize any pre-existing lots of record.  One month later, on July 15, ,2003, Plaintiff listed subject parcel for sale with an asking price of $795,000.00.  Again, the record is void of any reference to any pre-existing lot determination.  On February 3, 2004, Plaintiff and Pruglo entered into a binding real estate purchase contract on subject property for Plaintiff's full asking price of $795,000.00.  On February 12, 2004 Plaintiff and Pruglo opened an escrow account with Title Guaranty Escrow Services, Inc. to conduct the transaction.  Closing or finalization of the sale was set for March 22, 2004; however, that closing was extended solely to accommodate the delay in obtaining the "Metes & Bounds and Record Survey".  On March 17, 2004, Pruglo submitted an addendum to the sales contract removing any financial

contingencies from the sales contract, making the sales price of $795,000.00 an "all-cash" deal.

On April 4, 2004, and June 11, 2004, written documents confirmed that the only matter holding up closing and final recordation of the transaction was due to delays with obtaining the survey. On June 2, 2004 Plaintiff received their letter from Defendant Yuen. There is no evidence supporting the position that had Defendant Yuen recognized Goldstein's 2000 determination, Plaintiff's would have terminated the closing of the binding sales contract. One month later, on June 19, 2008, Plaintiff's closed and recorded the sale of subject parcel to Pruglo.

Accordingly, Defendant Yuen's letter was received after the fact, the parties were already entered into a binding sales agreement, which was moving forward, and there was no indication that the sale was going to fall through. Plaintiff was already moving forward with the sale of the subject property and there is no evidence to show that he relied on the contents of the letter to finalize the sale. As evidenced by the escrow documents, both parties were moving forward with the sale. Any statements to the contrary would be suspect at best.

Therefore, receipt of Defendant Yuen's June 2, 2004 letter did not constitute a promise, and furthermore, the letter did not sanction a fraud or injustice.

F.     THE RECORD DOES NOT SUPPORT A FINDING THAT
       PLAINTIFF JUSTIFIABLY AND DETRIMENTALLY RELIED
       UPON DEFENDANT YUEN'S DETERMINATION

Reliance is detrimental where the purchaser has changed his position, evidenced by consideration paid as well as improvements made to the property. *See Collier v. Shell Oil Co.,* 534 So.2d 1015, 1018-19 (Miss. 1988)(purchaser detrimentally relied upon statute similar to RLH § 4815 where it "struck their deal and paid their money" and "engaged in ten years of successful drilling operations"); *Marshall v. Marshall,* 670 S.W.2d 213, 215 (Tenn.1984) (no reliance where individuals have not acted, but merely assert that they have passively acquired rights…).

Here, Plaintiff purchased subject property on June 13, 2003 without any indication from Pruglo that the County would recognize any pre-existing lots of record. Four weeks later, on July 15, 2003, Plaintiff listed subject parcel for sale with an asking price of $795,000.00.  Again, the record is void of any reference to any pre-existing lot determination.   On February 5, 2004, Plaintiff and Pruglo entered into a binding real estate purchase contract for Plaintiff's full asking price $795,000.00.  Plaintiff and Pruglo opened escrow and terms and conditions of the sale were satisfied.  *See* Exhibit 10, Letter Referencing Opening Escrow Account. Closing was set for March 22, 2004; however, that closing ws moved back due to delay with obtaining a survey.

On June 2, 2004 Plaintiff received their letter from Defendant Yuen.   There is no evidence supporting   the position that had Defendant Yuen recognized Goldstein's 2000 determination, Plaintiff's would have terminated the closing of the binding sales contract[3].   One month later, on June 23, 2008, Plaintiff's closed and recorded the sale of subject parcel to Pruglo.

Likewise there is no evidence to support the requirement that Plaintiff made "substantial improvements" on the property.   As a matter of fact the only real expenditure made was hiring Robert Shirai ("Shirai") to conduct a survey of the property, as a condition precedent to the closing of the sales contract.   Similar to the *Marshall* holding cited above, Plaintiff's are merely asserting that they have passively acquired rights.

### G.   DEFENDANT YUEN OWES NO DUTY TO PLAINTIFF THERFORE PLAINTIFF'S NEGLIGENCE CLAIM MUST FAIL.

Fundamental in any determination of liability for negligence is the existence of duty owed by the putative tortfeasor to the injured person.   *First Ins. Co. of Hawaii, Ltd.   v. International Harvester Co.,* 66 Haw. 185, 189, 659 P.2d 64, 67 (1983).   Without a reasonable and proper limitation of the scope of duty of care owed by the County, the County would be confronted with an unmanageable,

---

3. Such a decision would not only be done in bad faith; however, it would undoubtedly subject  Plaintiff to additional legal liabilities including the real likelihood of specific performance, and monetary damages.  Such a consideration would also subject Plaintiff to considerable attorney fees and cost having to defend their position.

unbearable, and totally unpredictable liability. *See Kelley v. Kokua Sales & Supply, Ltd.,* 56 Haw. 204, 209, 532 P.2d 673, 676 (1975).

In *Cootey v. Sun Inv., Inc.,* 68 Haw. 480, 718 P.2d 1086 (1986), the Hawaiʻi Supreme Court held that if the County is liable for failure to discover an error in Sun Investment's subdivision plans that could only have been discovered by an independent engineering study, this court will, in effect, be impermissibly reallocating the County's resources, reordering its priorities, and setting policies that more rightly belongs to the legislative body of the County.  *See O'Connor v. City of New York*, 58 N.Y.2d 184, 191, 460 N.Y.S.2d 485, 488, 447 N.E.2d 33, 36 (1983).  The Hawaiʻi Supreme court further stated exposure to such liability would unduly lengthen the permit process, or could very well dissuade the County from enacting rules, regulations and laws applicable to proposed subdivisions and intended for the protection and welfare of the public, a result contrary to the public interest. *See Dinsky v.Town of Framingham,* 386 Mass. 801, 810, 438 N.E.2d 51, 56 (1982); *Stigler v. City of Chicago,* 48 Ill.2d 20, 25, 268 N.E.2d 26, 29 (1971); *Adams v. State*, 555 P.2d 235, 247-248 (1976).

Furthermore, the Uniform Information Practices Act ("UIPA") nowhere imposes an affirmative obligation upon a government agency to maintain records, instead, the UIPA requires agencies to provide access to those records that are actually maintained. HRS § 92F-1.

Here, Plaintiff alleges that the Defendant Yuen owed him "a standard of care to act in a reasonable careful and prudent manner, including the duty to maintain and verify the completeness and accuracy of records on which the public can reasonably be expected to rely." There is no evidence to support the position that Defendant Yuen's file was not complete, only mere speculation on the part of the Plaintiff.

Paragraph fifteen (15) of the Complaint specifically states: "Upon inspection of the file, surveyor Shirai first noticed the Planning Department's letter of May 22, 2000 addressed to Robert Williams. Surveyor Shirai had not previously seen this letter in the file when he surveyed the Subject Property during Plaintiff Molfino's ownership period. After reading the Planning Department's letter of May 22, 2000, Surveyor Shirai then contacted Plaintiff Molfino."

However, in Shirai's Oral Deposition taken on November 13, 2008, when questioned by Plaintiff's attorney stated the following:

Q. Do you know what a TMK file is, as maintained by the planning department?

A. I believe I do, yes.

Q. Do you recall ever reviewing the TMK file for parcel 35?

A. No, I didn't.

Q.    Do you recall reviewing the letter that's identified as Exhibit 5?  And there's just the first page of that, Mr. Shirai.

A.    No, I don't

*See* Exhibit 11, Deposition of Shirai dated Thursday, November 13, 2008, at 20, lines 13-22. ("Depo of Shirai, at 20/13-22")

Moreover, later in his deposition, upon examination Shirai stated the following:

Q.    At any time during your relationship with Mrs. Molfino, did you ever tell her that Bob Williams, on behalf of C. Brewer, had obtained a pre-existing lot determination for subject property?

A.    No.

*See* Depo of Shirai at 29/18-22.

What we do know as stated in the Complaint is that :

On January 15, 2005, Fuke addressed a letter to Defendants Yuen and County confirming that during their January 12, 2005 meeting, they reviewed the May 22, 2000 letter addressed to Robert Williams.  The letter sought confirmation that Defendant Yuen would accept the six (6) lots acknowledged in the May 22, 2000 letter as lots of record, and determine them eligible for HCC § 23-7.  *See* Plaintiffs' Complaint, at 5, ¶ 21.

Accordingly, we can infer that the May 22, 2000 letter was attainable, since Complaint alleges that Fuke reviewed said letter with Defendant Yuen during a January 15, 2005 meeting.  It would be reasonable to assume that had Plaintiff and/or his wife, Beverly Molfino, conducted a thorough and diligent investigation of the subject property, said letter would have been ascertainable, especially since Fuke, on Proglo's behalf, proffered it in his application request.

Additionally, HCC § 23-119 places the burden on the "owner of property seeking certification as a pre-existing lot shall provide reasonable evidence to meet the criteria set forth therein, provided that recognition of a lot based on a lease shall be supported by evidence that a valid lease was in existence on January 8, 1948, which specifies the boundaries of the claimed lot with reasonable certainty." *See* HCC Article 11. Pre-Existing Lots, § 23-119. Proof.

Accordingly, HCC § 23-119 clearly places the burden of proof on the party seeking certification of a pre-existing lot.  Here, Plaintiff Molfino and his wife, Beverly Molfino, independently choose to submit a pre-existing lot determination application without the assistance of a consultant, such as Fuke.  It would be reasonable to assume that had the Molfino's retained the assistance of a consultant, a complete application, containing all necessary documentation and information to meet the proof required under HCC § 23-119, would have been submitted to the Planning Department for consideration.

Moreover, the fact that Plaintiff entered into a binding sales contract four months prior to any action taken by Defendant Yuen makes the issue of negligence moot.

H.    COUNTY DID NOT CONVERT PLAINTIFF'S CHOSE.

Plaintiff complains that the acts of Defendant Yuen amounted to the conversion of a chose in action.  It is Plaintiff's theory that the letter denying Plaintiff's request for a seven (7) lot pre existing lot determination amounted to the conversion or taking of a right to that seven (7) lot subdivision which was vested in the Plaintiff at the time the letter was written.

A "chose in action" was considered to be any right to damages, whether arising from the commission of a tort, the omission of a duty, or the breach of contract.. *See In re Kealiiahonui's Estate*, 9 Haw. 1, 1893 WL 1044 (1893).

Conversion is said to encompass any distinct act of dominion wrongfully exerted over one's property in denial of his right or inconsistent with it is a conversion. Acts of conversion may be classified as: (1) a taking from the owners without his consent; (2) an unwarranted assumption of ownership; (3) illegal use or abuse of chattel; and (4) a wrongful detention after demand. *Tsuru v. Bayer*, 25 Haw. 693, 1920 WL 830, (1920).

Defendant asserts that Plaintiff cannot prove that he had a right to a subdivision of seven (7) lots as requested at the time the pre-existing lot

determination was made.  At best Plaintiff had the right to make a request for a consolidation and re subdivision as the subsequent owner did. Since no right to the subdivision exists, merely the right to request that a subdivision be granted, no conversion of any chose in action can be made.

Plaintiff asserted that the acts of Defendant Yuen were negligent or the result of a mistake.  This is not the evidence which can be used to support an intentional tort.  The County asserts that no evidence that a chose in action existed respecting the right to subdivision or that this right if it existed was converted by the actions of Defendant Yuen.

IV.   <u>CONCLUSION</u>

Based on the foregoing, Defendant urges this Honorable Court to grant Defendant's Motion for Summary Judgment.

Date:  <u>November 20, 2008</u>.

CHRISTOPHER J. YUEN in his capacity as
Planning Director, County of Hawaiʻi and
COUNTY OF HAWAIʻI, Defendants

By   /s/ William V. Brilhante Jr.
   WILLIAM V. BRILHANTE JR.
   Deputy Corporation Counsel
   Their Attorney