```
 1                IN THE UNITED STATES DISTRICT COURT

 2                      FOR THE DISTRICT OF HAWAII

 3
     GEOFFREY MOLFINO              )  CIVIL NO. 07-00626JMS-LEK
 4                                 )
              Plaintiff,           )  Honolulu, Hawaii
 5                                 )  January 12, 2009
          vs.                      )  10:00 a.m.
 6                                 )
     CHRISTOPHER J. YUEN in his    )  Motion for Summary Judgment
 7   capacity as Planning          )
     Director, County of Hawaii;   )
 8   COUNTY OF HAWAII; JOHN DOES   )
     1-10; JANE DOES 1-10; DOE     )
 9   PARTNERSHIPS 1-10; DOE        )
     CORPORATIONS 1-10; DOE        )
10   GOVERNMENTAL UNITS 1-10;      )
     and DOE ENTITIES 1-10         )
11                                 )
              Defendant.           )
12   _____)

13                    TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE J. MICHAEL SEABRIGHT,
14              UNITED STATES DISTRICT COURT JUDGE

15   APPEARANCES:

16   For the Plaintiff:       STEVEN D. STRAUSS
                              Law Offices of Steven D. Strauss
17                            P.O. Box 11517
                              Hilo, Hawaii  96721
18
     For the Defendant:       WILLIAM V. BRILHANTE, JR.
19                            Office of Corporation Counsel
                              101 Aupuni Street, Ste. 325
20                            Hilo, Hawaii  96720

21
     Official Court           GLORIA T. BEDIAMOL, RPR, RMR
22   Reporter:                United States District Court
                              P.O. Box 50131
23                            Honolulu, Hawaii 96850

24
     Proceedings recorded by machine shorthand, transcript produced
25   with computer-aided transcription (CAT).
```

```
 1   Monday, January 12, 2009                    10:00 a.m.
 2              THE CLERK:  Civil Number 07-00626-JMS, Geoffrey
 3   Molfino versus Christopher J. Yuen.  This case is called for a
 4   hearing on County of Hawaii Christopher J. Yuen's motion for
 5   summary judgment.
 6              MR. STRAUSS:  Good morning, Your Honor, Steve Strauss
 7   appearing on behalf of Plaintiff Geoffrey Molfino.
 8              THE COURT: Yes. Good morning.
 9              MR. BRILHANTE:  Good morning, Your Honor, William
10   Brilhante on behalf of the county defendants.
11              THE COURT:  Yes.  Good morning to you as well.
12              You all may be seated.  All right.  Well, I've read
13   through the briefing.  I do have a number of questions and
14   concerns.  And I think I want to talk a little bit before I
15   hear argument.
16              Part of my concern is that there has not been, I
17   think, sufficient briefing tied in specifically to specific
18   federal claims.  And maybe what you folks are missing is that
19   if the federal claims go out, it's unlikely I would retain
20   jurisdiction over the state law claims.  I would remand those
21   to state court.  And so I've been trying to focus on the
22   federal claims and feel there hasn't been sufficient briefing
23   in this sort of detail specifically tied to these federal
24   claims that I need.
25              We also have the 56 F motion.  So what I'm actually
```

1  contemplating doing is -- and I want to hear from both of you
2  on this -- but I'm contemplating on denying the motion without
3  prejudice, extending a date by which a new motion can be filed,
4  let some discovery go forward, and send you folks back to the
5  magistrate judge for a rescheduling conference.  Because I know
6  that would result in kicking the trial date is what I'm
7  thinking.
8            And let me go through what some of my problems are and
9  then we can have a discussion.  First of all, from the
10 plaintiff's side, I'm not sure I fully understand the takings
11 claim.  And I would like to hear Mr. Strauss articulate this
12 claim.
13           This is a very unusual case.  It's not a case where
14 there's a regulation and ordinance of some sort that the county
15 passed and as a result there's restriction on land use to some
16 degree.  There's an easement taken away from your client's
17 property, Mr. Strauss, or a restriction on the use of the
18 property or you have to pay in to some sort of a local fund as
19 a result of owning the property that you did not have to pay
20 for before.
21           And it's a little unclear to me if this is a takings's
22 claim in the first instance and what exactly your allegation
23 is.  Because on one hand you seem to be arguing mostly that it
24 is the misplacement, and whether it's negligent or intentional
25 and I understand you want to do more discovery on that, however

```
 1   it happened, under your facts at least, looking at the evidence
 2   in the light most favorable to you at the time your clients
 3   went to look at the file, the year 2000 letter was missing.  It
 4   was not in that file.
 5            And so at the time they purchased the property and up
 6   until the time they sold it, there's nothing in the file to
 7   reflect that previous determination.  And I understand this
 8   sort of negligence allegations and the other causes of actions
 9   that relate to that missing paperwork.
10            What I don't understand, what I'm not quite sure is if
11   this is a traditional Penn Central regulatory taking.  And it
12   does appear to me that if it is a taking, it would have to fall
13   under the Penn Central rubric.  And, again, there has not been
14   any real discussion of this.  And that's why I think I need
15   more help.
16            And if it falls under Penn Central, if that is the
17   right rubric to look at as far as where we go to take a look --
18   for instance, Mr. Strauss, let's assume for a minute there was
19   never a letter, that the year 2000 letter never existed, it was
20   never created, so it wasn't lost, it was just never in that
21   file, would you be making a takings claim in any event?
22            MR. STRAUSS:  No, Your Honor.
23            THE COURT:  In other words, you're not saying the
24   county was necessarily wrong but for the fact there was that
25   letter in the file.
```

```
 1              MR. STRAUSS:  That's correct.
 2              THE COURT:  All right.
 3              MR. STRAUSS:  That's correct.  And there was no appeal
 4   on any other grounds that could have been potentially raised.
 5              THE COURT:  So you're not saying the county was
 6   incorrect based on the information they had, assuming they
 7   didn't know about the letter?
 8              MR. STRAUSS:  I'm saying that my client waived any
 9   rights he would have had to challenge that determination.
10              THE COURT:  Okay.  All right.
11              MR. STRAUSS:  He would have had to go through the
12   board of appeals.
13              THE COURT:  All right.  So you're saying where the
14   process is right now, where we are right now, your claim is
15   really hinged to that missing letter?
16              MR. STRAUSS:  It is.  And if I may just address the
17   takings issue.
18              THE COURT:  Sure.
19              MR. STRAUSS:  But for this absence of a letter, there
20   would be no takings cause of action raised.  And I think that
21   the easiest way to analogize this would be, and I think it's
22   stated in the complaint originally, is that it is akin to
23   conversion of a chosen action.  That but for the letter being
24   absent, there's no claim.
25              The letter being absent essentially says the county
```

```
 1   has a duty to maintain its records in an appropriate manner.
 2   And when it fails to do that, it runs the risk that certain
 3   groups or certain individuals are going to be treated
 4   disparately from others which results in essentially an
 5   elimination of property development rights for our client in
 6   this case.
 7             And so the takings analysis is really akin to
 8   conversion of a chosen action.  It is the ability to develop
 9   the property that the county has destroyed or it has eliminated
10   as a result of its own failure to maintain records.
11             And there has to be -- I would concede, and maybe this
12   is a little premature in the argument, but I would concede as
13   the county has raised that but for intentional conduct of some
14   sort we're left with our negligence claims.
15             THE COURT:  Well, let's talk about that for a minute.
16   I mean, this is an interesting case in a lot of ways.  I think
17   both of you probably recognize that.
18             MR. STRAUSS:  It's an odd case.
19             THE COURT:  It's an odd case, but it's also lawyers
20   and judges and it's interesting because there's a lot of
21   substance behind the law here, and that's why I think it has
22   not been flushed out sufficiently for me.
23             If this deposition of Mr. Fuke -- is that his last
24   name?
25             MR. STRAUSS:  That's correct.
```

```
 1              THE COURT:  -- goes forward and you don't get any
 2   evidence of any intentional conduct --
 3              MR. STRAUSS:  I would stipulate to dismissal of the
 4   federal claims.
 5              THE COURT:  And then --
 6              MR. STRAUSS:  We would be left with our state
 7   negligence claim.
 8              THE COURT:  All right.  Mr.  Brilhante, is that your
 9   view as well?  Let me tell you, I'm not going to retain
10   jurisdiction over the state claims if that's all that's left.
11              MR. BRILHANTE:  If that's the court's determination,
12   that's fine with us.  However, we feel that there are other
13   steps or other items to be considered before we get to whether
14   there was a taking or whether negligence and duty and the like,
15   we feel strongly that some consideration should be given to
16   other exhaustion of administration --
17              THE COURT:  What is the rule of exhaustion on 1983
18   claims?  You tell me that.  You tell me where in your papers
19   you point that out.  What is the rule of exhaustion for a 1983
20   claim?
21              MR. BRILHANTE:  Is the court analogizing the takings
22   claim to a 1983 claim?
23              THE COURT:  It is a 1983 claim.  All of these claims
24   are 1983 claims. That's what you don't seem to understand.
25   Every one of these claims is a 1983 claim that's federal.
```

1  There's no other way to get into federal court but for 1983.
2         MR. BRILHANTE:  Okay.  If that were the case, then we
3  go back to the statute of limitations argument where I think
4  there's clear law that a two-year statute of limitations
5  applies to a 1983 case and we raise that in our response.  We
6  also, in our moving paper, we also address the takings issue.
7  I did a regulatory taking issue where I looked at the holdings
8  in the Penn Central as well as the Lucas --
9         THE COURT:  You don't really discuss it, Mr.
10 Brilhante.  It was insufficient briefing.
11        MR. BRILHANTE:  I understand.
12        THE COURT:  It wasn't sufficient for my purposes.  And
13 you didn't discuss the Williamson County issue at all.  And
14 I'll talk about that in a little bit.
15        Mr. Strauss, let me turn to you though.  I think the
16 one issue that is raised is the statute of limitations issue
17 which is an interesting one.  And I'm not quite sure from your
18 opposition where you come out on the two-year statute of
19 limitations.
20        MR. STRAUSS:  Well, the two-year statute applies.  It
21 is clearly the mechanism by which federal court jurisdiction is
22 triggered and the Ninth Circuit has come down.  In fact, I
23 dealt with a care prior in this circuit in which we had a
24 statute of limitations on the two-year statute go up.
25        The argument that we would make is that in this case,

1    because of the inability to discover it, and there is some case
2    law that says regardless of whether you discover or not, you're
3    stuck with the two-year statute of limitations.
4             Our position is that it would be equitably tolled by
5    the county's own failure to maintain its records and provide
6    the ability for the, in this case, the plaintiff or others
7    similarly situated the ability to recognize that they indeed
8    have a claim.
9             THE COURT:  But let me ask you this, is there anywhere
10   in the record that tells me when your clients discovered the
11   fact that this letter existed?
12            MR. STRAUSS:  Just based on Mr. Molfino's declaration.
13            THE COURT:  And that's within the statutory time
14   period?
15            MR. STRAUSS:  It's within the statutory time period --
16   assuming that it's equitably tolled.  If it's not equitably
17   tolled, no, it's outside.  But, yes, within the statute.  This
18   case was filed in 2007, the discovery was, as I recall, in
19   2006.
20            THE COURT:  So that falls within the statute?
21            MR. STRAUSS:  It falls within the statute, correct.
22            THE COURT:  The problem I have, Mr. Brilhante, with
23   your statute of limitations argument is you're asking me to
24   draw an inference from paragraph 15 of the complaint as to when
25   the statute begins to run.  That's what you're asking for.

```
 1           Beverly Molfino says she got a call from an individual
 2   who looked in the file.  Do you recall that person's name?
 3           MR. BRILHANTE:  Yes, it was Robert Shirai, the
 4   surveyor.
 5           THE COURT:  Shirai?
 6           MR. BRILHANTE:  Yes.
 7           THE COURT:  From Mr. Shirai. She doesn't recall the
 8   date she received that phone call from him.  And Mr. Shirai
 9   denies that he made that determination --
10           MR. STRAUSS:  At all.
11           THE COURT:  -- at all.
12           MR. BRILHANTE:  That's correct.
13           THE COURT:  So I'm not sure what date I look at here
14   for purposes of when the statute begins to run for actual
15   notice other than the date that Mr. Molfino has provided in his
16   declaration, which is within the two-year statute.
17           Now, clearly, it appears that the fact -- it appears
18   that the letter did reappear in the file sometime outside of
19   that two-year period.  But Mr. Molfino went and looked at that
20   file, it wasn't there, he sold the property and therefore had
21   no real reason to go back and look again after the property was
22   sold.  He had no reason to ask the purchaser what he determined
23   after the fact.
24           So I don't know that it was reasonable to expect the
25   plaintiffs in this case to go looking for more information in
```

```
 1   exercising their due diligence, even though maybe, had they
 2   gone back to the file after they sold the property, they would
 3   have found out outside the two-year period.
 4            MR. BRILHANTE:  May I respond?
 5            THE COURT:  Certainly.
 6            MR. BRILHANTE:  It's the county's position that it has
 7   not been proved that the letter was not in the file.
 8            THE COURT:  There's a genuine issue of material of
 9   fact -- stop that -- there's a genuine issue of material fact,
10   this is a summary judgment, not a trial.
11            MR. BRILHANTE:  I understand.  The county's position
12   is at the date of the denial, when Mr. Molfino received the
13   letter, that was the point in time in which an inquiry or some
14   type of questioning should have commenced regarding whether or
15   not the county's determination was proper.  And that was back
16   in 2004.
17            THE COURT:  All right.  I just reject that.  I just
18   think that's wrong.  I just think that's wrong.  He looked at
19   the file, it wasn't there, he is told you have two lots and
20   that's it, I don't know what else you expect this man to do at
21   that point in time.
22            MR. BRILHANTE:  Well, I think if we take a step back
23   to him we look at what the Hawaii county code states.  The
24   county code specifically states it's upon the applicant who is
25   responsible to submit all reasonable evidence for a
```

```
 1    determination -- for the planning director to make a
 2    determination.  There's nothing -- there's no body, no statute
 3    or regulation placing the duty on the county.
 4              THE COURT:  Mr. Brilhante, I think you need to get
 5    reasonable here.  I really do.  I think you need to step back a
 6    little bit and look at this.  What is it that Mr. Molfino
 7    should have done?  Should he have kept an investigation ongoing
 8    after he sold the property?
 9              MR. BRILHANTE:  No, I believe the subsequent owners --
10              THE COURT:  He should have somehow miraculously known
11    about this letter?
12              MR. BRILHANTE:  No, I think the facts indicate that
13    the subsequent owners took the proper steps.  Mr. Pruglo, who
14    purchased the property from Mr. Molfino, went and hired a
15    consultant.  The consultant, Mr. Fuke, prepared all the
16    documentation, he prepared the application.  He did the
17    necessary due diligence to submit a complete and formal packet
18    application to the County of Hawaii.  And the County of Hawaii
19    based their determination on that full application.
20              THE COURT:  Because there was a missing letter
21    earlier, looking at the evidence in the light most favorable to
22    Molfino.  There's no way around looking -- seeing it like that.
23    That's why I say you have to understand the summary judgment
24    stage we're at here and get reasonable.
25              All right.  So I'm going to deny the motion for
```

 1    summary judgment without prejudice, and I'm not going to reach

 2    the statute of limitations issue.  But I don't see a reason to

 3    reach that now.

 4            MR. STRAUSS:  I would agree, Your Honor. And depending

 5    upon what Mr. Fuke says, it may render that issue moot relative

 6    to the federal claims.

 7            THE COURT:  Let me ask you both this then.  If that's

 8    the direction I want to send this, is it agreeable that you

 9    both go forward with that deposition of Mr. Fuke, if there's no

10    evidence of intentional conduct, which I have to say I suspect

11    you're not going to get --

12            MR. STRAUSS:  I may not get it, Judge, but I have the

13    duty to pursue it.  Otherwise, I'm facing a malpractice issue.

14            THE COURT:  I'm not criticizing you, Mr. Strauss.

15            MR. STRAUSS:  It's a chance.  It's a shot.  Mr. Fuke

16    may be the only one that knows where this letter came from.

17    And I'm hoping there was no -- from a citizen's standpoint,

18    there was no engineered withholding of the letter and a

19    replacement after his client came in.  I hope that was not the

20    case.  But if it is, I have to find out.

21            THE COURT:  All right.  If it's not the case.

22            MR. STRAUSS:  If it's not the case.

23            THE COURT:  If it's not the case, there would be an

24    agreement of stipulation essentially to dismiss the federal

25    claims?

1            MR. STRAUSS:  I would have to stipulate, Your Honor.
2    I don't have intentional misconduct short of an ability to
3    prove it.
4            THE COURT:  Mr.  Brilhante, do you agree with that?
5            MR. BRILHANTE:  I agree with that, Your Honor.
6            THE COURT:  All right.  And then I would remand the
7    remaining claims back to state court.  Okay.  If you get the
8    evidence that suggests, or at least for the purposes of summary
9    judgment, is sufficient for you you believe to show intentional
10   conduct, Mr. Strauss, then I think what we need to do is go
11   back to square one on this and address issue by issue, federal
12   issue by federal issue, and state issue by state issue the law
13   and understand how exhaustion applies to 1983 cases and look at
14   the exhaustion, what is really called ripeness, for takings
15   claims.
16           And there's some law in the Williamson County case
17   that discusses this.  Let's see if I can find you a cite.
18   Williamson County versus Hamilton Bank 473 U.S. 172, 1985.
19           What Williamsom County says in a takings case, there
20   are two issues federal court must take up on ripeness:  One is
21   whether or not the governmental entity charged with
22   implementing the regulations has reached a final decision
23   regarding the application of the regulations.  That doesn't
24   mean you have to appeal at every level, but there has to be a
25   final decision.

1         Secondly, the landowner has sought compensation
2    through the procedures the state has provided for doing so.
3         Mr. Strauss, unfortunately for you, the Ninth Circuit
4    has said even if someone removes the case from federal court,
5    that federal court has to either dismiss the takings claim or
6    remand it back to state court.
7         MR. STRAUSS:  I'm aware of that, Your Honor.
8         THE COURT:  Okay.  And I actually sat on a panel
9    recently that discussed the issue of whether or not a takings
10   claim -- ripeness issue is jurisdictional versus prudential.
11   And that's the reason I raise this because it may go to my
12   subject matter jurisdiction.  And that is McClung versus City
13   of Sumner at 548 F.3rd 1219.
14        MR. STRAUSS:  Thank you for the direction, Your Honor.
15        THE COURT:  So I think we need a lot more on this
16   takings claim and then the very interesting issue, and I have
17   no idea right now how this would play out, if an equal
18   protection claim or a due process claim survived but the
19   takings doesn't.  Because you haven't gone through, for
20   instance, the appropriate state process, what do I do?  Do I
21   remand everything?  Do I dismiss the takings?  Do I remand only
22   the takings?  I don't know the answer to that.  Because I
23   haven't seen cases where you have a takings claim accompanied
24   by other federal claims.
25        And then there's been no discussion really whatsoever

```
 1    of the due process claims and what, Mr. Strauss, you would have
 2    to prove whether it would be a substantive or a procedural due
 3    process claim that you're making here.
 4              MR. STRAUSS:  I understand.
 5              THE COURT:  Is that sufficiently clear as to where I
 6    want to go here?
 7              MR. STRAUSS:  It is to us, Your Honor.
 8              MR. BRILHANTE:  It is, Your Honor.  Thank you very
 9    much.
10              THE COURT:  Okay. So what I'm going to do is just
11    enter a one-line order denying this motion without prejudice to
12    refiling.  Why don't we talk about dates though by which the
13    depositions should be done and then a subsequent motion for
14    summary judgment should be filed?
15              MR. STRAUSS:  Assuming that we're going to be having
16    to reset -- if the case stays here, we're going to have to
17    reset, given my current trial calendar, I would request that we
18    be able to complete the deposition within 60 days.
19              I've talked to Mr. Fuke already about his deposition
20    availability, and it's probably not until early February.  I'm
21    in a couple of trials in February, I do a lot of criminal
22    defense work.  And then if we were to get our transcript on an
23    expedited basis, it would give us another two weeks.  So if we
24    were looking at within 90 days to either advise the court as to
25    where we're going to go or the defense can refile their motion.
```

Case 1:07-cv-00626-JMS-LK   Document 74   Filed 12/18/09   Page 17 of 20     PageID #: 507

17


Case 1:07-cv-00626-JMS-LK   Document 74   Filed 12/18/09   Page 17 of 20     PageID #: 507

17

1   I don't know if that would work with the court's schedule.
2               THE COURT:  All right.  So let's say by April 3rd you
3   folks get notice to the court as to whether the federal claims
4   are being dismissed -- in other words, essentially a
5   stipulation dismissing, or you can -- one of you can draft a
6   letter approved by the other saying that there will be no
7   stipulation for dismissal.
8               And if that's the case, how much time would you need
9   to file a motion for summary judgment after April 3rd?
10              MR. BRILHANTE:  I would say within a couple of weeks
11  at the most -- two to three weeks.
12              THE COURT:  All right.  I'll give you until April
13  27th.
14              MR. BRILHANTE:  That sounds sufficient, Your Honor.
15  Thank you very much.
16              THE COURT:  And that's the only deadline that will be
17  extended as far as the Rule 16, correct?  No other date has to
18  be extended, or does the discovery deadline need to be
19  extended?
20              MR. STRAUSS:  To accomplish Mr. Fuke's deposition?
21              MR. BRILHANTE:  The discovery deadline is February
22  6th.
23              MR. STRAUSS:  We would need to extend.
24              THE COURT:  Okay.  So in the order what I'm going to
25  do is I'll say we're extending this deposition deadline for

```
 1   Mr. Fuke until February 27th and extending substantive motions
 2   deadline until April 27th.
 3              MR. STRAUSS:  That should be sufficient, Your Honor.
 4              THE COURT:  Okay.  And then I would ask the two of you
 5   to reach out to the magistrate judge, explain what's happening
 6   here and get a resetting of all of their dates.  So I'm going
 7   to vacate all other dates.  I want you to do that now.  I don't
 8   want you to wait until later.  In other words, you can do this
 9   by telephone, right, with the magistrate judge?
10              MR. STRAUSS:  Typically.
11              MR. BRILHANTE:  Historically, yes.
12              THE COURT:  Okay.  All right.
13              MR. STRAUSS:  We'll take care of that, Your Honor.
14              THE COURT:  And I'll order you to reach out to the
15   magistrate judge to make the appropriate arrangements to reset
16   the other dates.
17              MR. STRAUSS:  Thank you very much.
18              THE COURT:  Does that handle -- procedurally, does
19   that take care of everything?
20              MR. STRAUSS:  I think that covers everything.
21              MR. BRILHANTE:  I'm in agreement, thank you.
22              THE COURT:  Very well.  So I'm going to put out this
23   short order and then we'll see where we go from there.
24              MR. STRAUSS:  Thank you for your time this morning.
25              MR. BRILHANTE:  Thank you, Your Honor.
```

1  (Recess at 10:22 a.m.)
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

```
 1                     COURT REPORTER'S CERTIFICATE
 2            I, Gloria T. Bediamol, Official Court Reporter, United
 3   States District Court, District of Hawaii, do hereby certify
 4   that the foregoing is a true, complete and correct transcript
 5   from the record of proceedings in the above-entitled matter.
 6
 7            DATED at Honolulu, Hawaii, December 17, 2009.
 8
 9
10                                    /s/ Gloria T. Bediamol
11                                    GLORIA T. BEDIAMOL.
12                                    RPR, RMR
13
14
15
16
17
18
19
20
21
22
23
24
25
```